UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,

Plaintiff,

v.

Naval Kishor Srivastva,

Defendant.

NDOH Case No. 3:26-MJ-5373
WDPA Case No. 2:26-MJ-1495

MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Defendant Naval Kishor Srivastva is charged with one count of wire fraud in violation of 18 U.S.C. § 1343, arising from allegations of conduct which took place, at least in part, here in the Northern District of Ohio, Western Division. He was arrested in the Western District of Pennsylvania, the district encompassing his current residence, on a warrant issued pursuant to that charge. The case has not been indicted and so bears an "MJ" assignment. After his arrest, Western District of Pennsylvania Magistrate Judge Maureen P. Kelly conducted a joint preliminary hearing and detention hearing. Judge Kelly found probable cause, (WDPA Doc Nos. 11), and also ordered Srivastva's release on an unsecured appearance bond with specific conditions. (WDPA Doc. Nos. 12 & 13).

In response to Judge Kelly's order of release, the government filed an "Emergency Motion for a Stay" of that decision and further requested revocation of the order of release. (Doc. No. 4). The motion was randomly assigned to me, and I granted the government's motion in part, ordering a temporary stay of Mr. Srivastva's release pending review of the government's motion for

revocation and continued detention. The Defendant filed his response to the government's motion, (Doc. No. 9), and the government filed a supplement to its earlier motion. (Doc. No. 10). I have reviewed the entire record in this case, including counsels' briefing and attachments, the transcript of the preliminary and detention hearing, and the exhibits admitted at that hearing. My review of Judge Kelly's detention decision is de novo.

## II. ANALYSIS

The parties agree the Defendant is entitled to a presumption of release under the Bail Reform Act. But the government seeks to convince me that release is improper, asserting the Defendant is both a risk of flight and a risk of danger to the community, the two pivotal issues upon which a judicial officer ultimately makes determinations when those provisions are invoked.

Notably, the government did not assert danger to the community at Mr. Srivastva's bond hearing, focusing instead solely on the risk of flight.

I first address the risk of danger to the community. The allegations against Mr. Srivastva consist of his role and actions in inducing an older couple to part with their essential financial assets by way of fraud by attempting to convince them that their assets were at risk and that he, in his fictious role as an officer of the FDIC, would assist them in protecting those assets. The scheme as alleged by the government was layered and somewhat nuanced in its execution, ultimately seeking to obtain a total of over $150,000 in assets from the alleged victims.

The government correctly asserts that the risk of danger to the community is "not limited to the danger of physical violence." *United States v. Isaacs*, 469 F. Supp. 3d 801, 804 (S.D. Ohio Apr. 7, 2020) (cleaned up). Here, the government argues in essence that the vulnerable nature of the victims, the sophistication of the attempted scheme, and the potential impactful losses put other members of the community at unacceptable risk. While I concede there is some risk, I do not think this alleged conduct by itself, and in light of the bond conditions imposed by Judge Kelly, put the

public sufficiently at risk. Further, there is no suggestion the Defendant has otherwise previously engaged in this behavior, or any other criminal conduct. The assertion that the conduct alleged is harmful and could be repeated, standing alone, is not enough. Accordingly, I find the government has not offered sufficient evidence of danger to the community.

Turning to the issue of flight risk, the government makes much of the Defendant's uncertain status as a non-citizen of the United States, and that that coupled with his lack of ties to his community and to the United States, presents a high risk of flight. This government pressed this factor at the bond hearing and repeats those concerns now.

The parties do not necessarily agree on whether and to what extent I might consider a non-citizen's risk of flight. Indeed, courts are not in accord as to what, if any, role the defendant's residence status might play in a court's determination of flight risk. In the Sixth Circuit, a close reading of recent cases suggests there is no ban on consideration of the Defendant's status, but that I may not conclude detention is appropriately merely due to the existence of a defendant's status as a non-citizen, or the possibility of removal or deportation during the pendency of his case, or after. So, it appears I may indeed consider his status as the government urges, but only in the general evaluation of his potential risk of flight. Notably, Congress chose not to include a defendant's residence status or lack of United States citizenship among the class of circumstances for which release should be denied.

Mr. Srivastva has immigration counsel, and documents relating to his status and application for relief were made part of the record at his detention hearing. While it is not clear whether his application under the Violence Against Women Act will be successful in his eventually obtaining Legal Permanent Resident status, he has properly submitted an application, and the anticipated delay of more than four years in review of that application is hardly his fault.

Further, the mere possibility that he may be removed from the United States by United States Custom and Immigration Services is not sufficient reason to deny him bond. USCIS, and the Department of Justice in pursuing this prosecution, ought to be able to coordinate their respective priorities – prosecute him now or seek to detain and remove him now. Ultimately, the government cannot have it both ways, and Mr. Srivastva shouldn't suffer due to any lack of coordination between those two executive agencies, or the delay in reviewing his application.

While Mr. Srivastva has not been in the United States for long, he has been law abiding up until the allegations brought here. He submitted a letter of support from new friends he has made in his community, and he also enjoys support from a bordering church, where he has been accepted, proven to be an active member of the congregation, and has been a volunteer for the church.

There is no suggestion Mr. Srivastva has the assets or domestic or foreign connections for an easy exit from the United States. Indeed, there is nothing in the record supporting a large bank account balance or other holdings which would ease his fleeing prosecution. Judge Kelly's conditions include his surrendering any passport, not applying for any other travel documents, house arrest, and GPS monitoring, all of which would make his successfully fleeing prosecution difficult and unlikely.

On balance, the government has not established facts supporting his risk of flight.

I find upon de novo review of the record and considering the arguments and submissions of counsel that the government has neither established Mr. Srivastva's risk of flight nor his danger to the community, so the presumption for release holds. Even if I assume there is sufficient evidence to raise these concerns, the proposed conditions of release satisfy me that he is not a risk of flight nor a danger to the community.

The government's Motion for Revocation, (Doc. No. 4), is denied. Mr. Srivastva shall be released as ordered by Magistrate Judge Kelly, under the terms and conditions she set. (WDPA Doc. No. 3-9, filed September 15, 2026).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge